# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0678 |
| | § | |
| JOHN STAPP, INC., *et al.*, | § | |
|     Defendants. | § | |

## **MEMORANDUM AND ORDER**

Pending before the Court in this admiralty case is Plaintiff United States of America's ("Plaintiff's") Motion for Summary Judgment [Doc. # 32] and Memorandum of Law in Support of Motion for Summary Judgment [Doc. # 33] ("Motion"). Defendants John Stapp, Inc. ("John Stapp"), Stapp Towing Co., Inc. ("Stapp Towing"), and tug CAPTAIN STAPP *in rem* ("*CAPTAIN STAPP*") (collectively, "Defendants")[1] have filed a Response [Doc. # 34] and a Sur-Response [Doc. # 36]. Plaintiff has filed a Reply [Doc. # 35]. Having considered the parties' submissions, all matters of record,

---

[1]    Bruce Stapp also joined Defendants' Response and Surresponse. Plaintiff named Bruce Stapp as a defendant in its earlier pleadings. *See* Original Complaint [Doc. # 1, ¶ 4]; Amended Complaint [Doc. # 14, ¶ 5]. Plaintiff dropped its claims against Bruce Stapp in its Second Amended Complaint [Doc. # 24]. In that Complaint, Plaintiff only asserts claims against John Stapp, Stapp Towing, and the *CAPTAIN STAPP*.

and applicable legal authorities, the Court concludes that Plaintiff's Motion should be **granted**.

I.   **BACKGROUND**

The SS EQUALITY STATE ("*EQUALITY STATE*") is a vessel owned by Plaintiff. On December 13, 2003, the *EQUALITY STATE* was moored in the Houston Ship Channel at City Docks 13 and 14. The weather was fair with good visibility and little wind. *CAPTAIN STAPP*, with tug STARFISH and four unidentified barges in tow, struck the *EQUALITY STATE*. This allision[2] occurred at approximately 11:39 a.m. The allision caused a sharp indention in the *EQUALITY STATE*'s starboard hull and other damages that were visible immediately after the allision. However, the vessel's hull was not breached.

The *CAPTAIN STAPP* controlled the tug. Neither the *STARFISH* nor any of the barges in tow contributed to the allision. The parties agree that the *CAPTAIN STAPP* is entirely at fault in causing the allision. John Stapp owns the *CAPTAIN STAPP*. Stapp Towing employed the master and crew of the *CAPTAIN STAPP* and was responsible for its operation. Stapp Towing is currently in bankruptcy under Chapter 7 of the United States Bankruptcy Code. On November 8, 2005, the bankruptcy court

---

[2]   An allision is defined in maritime law as "[t]he contact of a vessel with a stationary object such as an anchored vessel or pier." BLACK'S LAW DICTIONARY 83 (8th ed. 2004).

entered an agreed order modifying the automatic stay arising under § 362 of the Bankruptcy Code to permit Plaintiff to pursue insurance proceeds from Stapp Towing's insurance carrier.[3]

Pacific Gulf Marine ("Pacific Gulf"), the ship manager of the *EQUALITY STATE*, engaged Sabine Surveyors, Ltd. ("Sabine") as an independent surveyor to assess the damage caused by the allision. Sabine surveyed the *EQUALITY STATE* on December 22, 2003.[4] On December 30, 2003, Sabine issued its survey with the following findings and recommendations:

### Found

1. Starboard side shell plating set in sharply 0" - 6" over a 12' x 10' area centered between frame numbers 90 & 95 and 18' below main deck.

### Recommended

1. To be cropped and renewed as original:

• One section side shell plating 12' x 10' x 1" flat plate

Internal framing

• Four sections vertical side shell frame 12' 9" x 4" x 5/8" angle.

---

[3]  *See In re Stapp Towing Co., Inc.*, No. 04-82115-G3-7 (Bankr. S.D. Tex. filed Oct. 11, 2004), [Bankr. Doc. # 99].

[4]  Billy Greer Affidavit, Exhibit 3 to Motion ("Greer Affidavit"), 1–2.

- One section cargo hold upper fidley deck 10' x 1'6" x 1/2" flat plate.

- One section fuel oil tank top plating 12' x 1'6" x 1/2" flat plate.

- Two sections transverse web frame 12' x 2' x 1/2" flat plate.

- Four sections upper fidley transverse deck chords 6' x 9' x 4' x 1/2" angle.

- Four upper bracket deck chord brackets 24' x 18' x 18' x 1/2" flat plate.[5]

Sabine also noted that the damages it found "could reasonably be attributed to the contact [the allision with the *CAPTAIN STAPP*] as reported."[6]

After consulting with the vessel's engineers, Pacific Gulf, and the American Bureau of Shipping, Plaintiff determined that the damages to the *EQUALITY STATE* from the allision did not affect the vessel's seaworthiness. Plaintiff therefore decided to defer repairs until sometime in 2007 when the *EQUALITY STATE* is scheduled for drydocking.[7] On January 9, 2004, Pacific Gulf issued specifications detailing the work that will be required to repair the damages from the allision.[8] Plaintiff then solicited fixed-price bids for the work described in the specifications. The winning bid was a

---

[5]   Sabine's Damage Survey, Exhibit E to Greer Affidavit.

[6]   *See id.*

[7]   Greer Affidavit, at 2.

[8]   *Id.*, at 2; *see also* Steel Repair Specifications, Exhibit F to Greer Affidavit.

fixed price quote of $108,620.[9]  Plaintiff plans to have the repairs performed when the vessel undergoes a pre-scheduled drydock in 2007.

Plaintiff's Motion is fully briefed and ripe for determination.

## II.     SUMMARY JUDGMENT STANDARDS

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  FED. R. CIV. P. 56(c).  In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The movant bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the record], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 322.  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *ExxonMobil Corp.*, 289 F.3d at 375.

---

[9]     *Id.*, at 2; *see also* Fixed Bid Breakdown, Exhibit G to Greer Affidavit.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994))). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this

burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.   ANALYSIS

Plaintiff seeks a judgment jointly and severally against Defendants for $108,620, the amount of the fixed-price bid for repairs of the damage caused by Defendants to the *EQUALITY STATE* by the December 2003 allision.[10] Defendants admit to fault in causing the allision and thus liability is undisputed. The issue that separates the parties is the question of the amount of damages. The Court concludes that Defendants have not raised a genuine question of material fact and will grant summary judgment in favor of Plaintiff.

### A.   Liability

"When a moving vessel collides with a stationary object, the moving vessel is presumed to be at fault." *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 503 (5th

---

[10]   Plaintiff seeks an *in personam* judgment against John Stapp, an *in rem* judgment against the *CAPTAIN STAPP*, and an *in personam* judgment against Stapp Towing to the extent that entity has insurance coverage. *See supra* note 3.

Cir. 1994) (citing *The Oregon*, 158 U.S. 186, 192–93 (1895); *Pennzoil Producing Co. v. Offshore Express, Inc.*, 943 F.2d 1465, 1471 (5th Cir. 1991); *Am. Petrofina Pipeline Co. v. M/V Shoko Maru*, 837 F.2d 1324, 1326 (5th Cir. 1988)).  Thus, when a moving vessel allides with a moored or anchored vessel, the moving vessel is presumed to be at fault.  *See Skidmore v. Grueninger*, 506 F.2d 716, 721 (5th Cir. 1975) (stating general maritime rule that "where a moving vessel collides with a vessel at anchor the moving vessel is presumed to be at fault"); *Brown & Root Marine Operators, Inc. v. Zapata Off-Shore Co.*, 377 F.2d 724, 726 (5th Cir. 1967) (same).  This presumption may be rebutted if the moving vessel shows by a preponderance of the evidence that it acted with reasonable care, the stationary object caused the allision, or the allision was an unavoidable accident. *Am. Petrofina Pipeline*, 837 F.2d at 1326.

Under maritime law, a vessel's operator and a vessel's owner are liable *in personam* for a vessel's negligent pilotage.  *See In re Mid-South Towing Co.*, 418 F.3d 526, 528–29 (5th Cir. 2005) (affirming *in personam* judgment against vessel owner and operator for vessel's allision with a wharf); *Galveston County Nav. Dist. No. 1 v. Hopson Towing*, 877 F. Supp. 363, 369–70 (S.D. Tex. 1995) (holding vessel owner and vessel operator were both liable, *in personam*, for vessel's negligent allision with fixed object), *rev'd in part on other grounds*, 92 F.3d 353 (5th Cir. 1996).  Furthermore, "a vessel is liable *in rem* for the negligence of its pilot."  *Kingfisher Shipping Co., Ltd.*

v. *M/V Klarendon*, 651 F. Supp. 204, 207 (S.D. Tex. 1986) (citing *The Barnstable*, 181 U.S. 464 (1900); *Rali v. Troop*, 157 U.S. 402 (1895)); *see also Probo II London v. Isla Santay MV*, 92 F.3d 361, 365 (5th Cir. 1996). In admiralty, "[j]oint and several liability applies when there has been a judgment against multiple defendants." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994); *see also The Atlas*, 93 U.S. 302, 317–19 (1876) (adopting joint and several liability rule in admiralty); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1124–30 (5th Cir. 1995) (en banc) ("joint and several liability is the maritime rule").

It is undisputed that the *CAPTAIN STAPP*, while engaged in a tow, allided with the moored *EQUALITY STATE*.[11] Thus, the *CAPTAIN STAPP* is presumed to be at fault. *See The Oregon*, 158 U.S. at 192–93; *Brunet*, 15 F.3d at 503; *Pennzoil Producing*, 943 F.2d at 1471; *Am. Petrofina Pipeline*, 837 F.2d at 1326. Defendants do not dispute their liability for the allision. Accordingly, Stapp Towing and John Stapp are liable *in personam, see In re Mid-South Towing*, 418 F.3d at 528–29; *Galveston County Nav. Dist. No. 1*, 877 F. Supp. at 369–70, and the *CAPTAIN STAPP* is liable *in rem* to Plaintiff for damages to the *EQUALITY STATE* caused by the allision. *See The Barnstable*, 181 U.S. at 468; *Probo II London*, 92 F.3d at 365; *Kingfisher Shipping*, 651 F. Supp. at 207. Defendants are jointly and severally liable

---

[11]   Bradley Stapp Affidavit, Exhibit 1 to Motion, at 1.

for the damages. *See McDermott*, 511 U.S. at 220–21; *The Atlas*, 93 U.S. at 317–19; *Coats*, 61 F.3d at 1124–30.

### B. Damages

#### 1. Plaintiff's Damages Evidence

In the case of a collision or other marine casualty, when the damaged vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to restore it to its pre-casualty condition. *Gaines Towing and Transp., Inc. v. Atlantia Tanker Corp.*, 191 F.3d 633, 636–37 (5th Cir. 1999) (citing *The Tug June S v. Bordagain Shipping Co.*, 418 F.2d 306, 307 (5th Cir. 1969); *Delta Marine Drilling Co. v. M/V Baroid Ranger*, 454 F.2d 128, 129 (5th Cir. 1972)).[12] To recover cost of repairs, Plaintiff need only prove "with reasonable certainty that the damages claimed were actually or may be reasonably inferred to have been incurred as a result of the collision." *Marine Transport Lines, Inc. v. M/V Tako Invader*, 37 F.3d 1138, 1140 (5th Cir. 1994) (citing *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1155 (5th

---

[12] Further, "owners of an injured vessel are often entitled to recover for the loss of the vessel's use, while laid up for repairs." *Nerco Oil & Gas, Inc. v. Otto Candies, Inc.*, 74 F.3d 667, 669 (5th Cir. 1996) (citing *The Potomac*, 105 U.S. 630 (1882); *Cont'l Oil Co. v. SS Electra*, 431 F.2d 391, 392 (5th Cir. 1970)). Because Plaintiff intends to have the repairs done while the *EQUALITY STATE* is in a scheduled drydock, Plaintiff does not seek loss of use damages.

Cir. 1990)); *see Mitsui O.S.K. Lines, K.K. v. Horton & Horton, Inc.*, 480 F.2d 1104, 1106 (5th Cir. 1973).

Sabine, an independent surveyor, assessed the damage caused by the allision. Sabine determined that the allision caused an indention on the *EQUALITY STATE*'s starboard hull "set in sharply 0" – 6" over a 12' x 10' area centered between frame numbers 90 & 95 and 18' below main deck."[13] Defendants do not dispute the contents of Sabine's survey. Further, the indention Sabine found is materially consistent with the indention reported by Ricky Caudle, the chief mate of the *EQUALITY STATE*, shortly after the allision.[14]

Pacific Gulf drafted specifications for the repair of this damage. Plaintiff solicited fixed-price bids for the repair work described in the specifications. The winning bid was a fixed-price bid of $108,620.[15] This evidence satisfies Plaintiff's initial summary judgment burden to demonstrate entitlement to judgment and an absence of a genuine material fact, *see Celotex Corp.*, 477 U.S. at 322. Plaintiff has submitted probative evidence of damages of reasonable certainty in the sum of

---

[13] Sabine's Damage Survey, Exhibit E to Greer Affidavit.

[14] Caudle estimated the allision created an indention in the *EQUALITY STATE*'s hull measuring three to four inches deep. Ricky Caudle Deposition ("Caudle Deposition"), Exhibit 2 to Motion, at 8.

[15] Greer Affidavit, at 2; *see also* Fixed Bid Breakdown, Exhibit G to Greer Affidavit.

$108,620. *See Marine Transport Lines*, 37 F.3d at 1140. Defendants, the non-moving parties, must therefore present admissible evidence to raise a genuine issue of material fact for trial on damages. *See Littlefield*, 268 F.3d at 282.

### 2. Defendants' Damages Evidence and Arguments

**Caudle's Estimate.**– Defendants contest the "cost or necessity of repairs."[16] However, the only putative damages evidence Defendants rely on is an excerpt from a Marine Accident Report ("Report"), which Plaintiff attached as an exhibit to its Motion.[17] Ricky Caudle, on duty at the time as Chief Mate of the *EQUALITY STATE*, prepared the Report.[18] The Report contains general information on the *EQUALITY STATE* and details of the allision, such as weather conditions and Caudle's narrative describing the incident. In the Report, Caudle estimated the allision caused $15,000 in loss or damage to the *EQUALITY STATE*.

At best, Caudle's damages estimate is akin to an expert opinion. The Court must therefore make the threshold determination of whether Caudle is qualified to give the expert opinion he seeks to express. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993). The

---

[16] Response, at 2.

[17] *See* Exhibit B to Greer Affidavit.

[18] Caudle Deposition, Exhibit 2 to Motion, at 8.

burden is on Defendants to establish by a preponderance of the evidence that Caudle's opinion is admissible. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc). Defendant need not, however, prove "that the expert's testimony is correct." *Id.* The admissibility of an expert's testimony is committed to the trial court's sound discretion. *See Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146–147 (1997).

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise." FED. R. EVID. 702.[19] The trial judge must determine as an initial matter whether the proffered witness is qualified to give the expert opinion he seeks to express. *Kumho Tire*, 526 U.S. at 156–57); *Daubert*, 509 U.S. at 589 (1993); *see Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999).

Under *Daubert*, the district court also must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid

---

[19] Federal Rule of Evidence 702 governs the admission of expert testimony and provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

[the reliability criterion] and of whether that reasoning or methodology can be applied to the facts at issue [the relevance analysis]." *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592–93). This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617–618 (citing *Kumho Tire*, 526 U.S. at 147). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

A court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590. To demonstrate reliability, the proponent of the expert testimony must present "some objective, independent validation of the expert's methodology. The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Courts must consider (1) the validity of the scientific principles used; (2) the accuracy of the data relied upon by the expert; and (3) the correctness of the application of the scientific principles to the

relevant data. *See, e.g., Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 (5th Cir. 1994).

Caudle's superficial damage estimate is insufficient to raise a genuine material issue of fact on the amount of damages. First, nothing in the record suggests Caudle is qualified to render what amounts to an expert opinion on damages. *See* FED. R. EVID. 702; *Kuhmo Tire*, 526 U.S. at 156. Defendants point to no evidence that Caudle had the necessary training or experience to reliably assess structural damage to a vessel. Rather, it appears he simply offered an off-the-cuff estimate for the first time.

Second, there is no evidence Caudle gathered sufficient facts necessary to express a reliable opinion. *See, e.g., Watkins*, 121 F.3d at 989. Caudle testified in his deposition that his original damage assessment was based on "a quick look" and that he did not participate in the independent survey to assess in detail the damage caused by the accident.[20]

Third, assuming *arguendo* that Caudle were qualified to render an expert opinion on damages and that he relied on sufficient facts to render an opinion, *see* FED. R. EV. 702, Defendants have not shown that Caudle used a reliable method to estimate damages. *See Daubert*, 509 U.S. at 592–93 (proponent of expert testimony must

---

[20] Caudle Deposition, 13–14. At some point the day of the allision, Caudle and the port engineer checked the *EQUALITY STATE* to assess whether the vessel had become unseaworthy or put in imminent danger. They concluded it had not.

establish expert's opinion is based upon a reliable methodology). There is no evidence setting forth the method Caudle used to reach his damages estimate. Caudle's Report was based only on a "quick look" at the visually evident damage made shortly after the allision.[21] Defendants have not established that Caudle reached his opinion with "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. In sum, Defendants' have failed to establish that Caudle is qualified to render an expert damages opinion, based his opinion on reliable facts, or utilized reliable methods in reaching his opinion.

**Defendants' Other Arguments.**– Defendants make other arguments in an attempt to avoid summary judgment. None are supported by any evidence or authority. First, Defendants complain "Plaintiff offers no proof that the proposed repair contract is competitively bid nor does Plaintiff's proposal/contract speak to charges for inflation, taxes, or the need for a special port engineer."[22] Defendants cite no case law or statute establishing Plaintiff's obligation to offer such proof to recover damages.[23] Plaintiff need only prove its damages of $108,620 with reasonable certainty. *See Marine*

---

[21] *See supra* note 20.

[22] Sur-Response, at 2.

[23] Defendants do not cite to any case law or other legal authority in their Response or Surresponse.

*Transport Lines*, 37 F.3d at 1140. As explained above, Plaintiff has met this evidentiary burden.

Defendants also complain that there is no showing that Plaintiff will actually drydock the vessel or have the repairs in issue performed. Defendants speculate that Plaintiff simply will sell or scrap the *EQUALITY STATE* before incurring any repair expenses. This is argument, even if it had some factual underpinning, which it does not, lacks legal merit. The Fifth Circuit teaches that "[t]he owner of a vessel damaged by the negligence of another is entitled to recover the reasonable cost of its restoration to as good a condition as before the collision, and this is so even though no repairs, or even partial repairs, are actually made." *Tug June S v. Bordagain Shipping Co.*, 418 F.2d 306, 308 (5th Cir. 1969) (citing *Bleakley Transp. Co. v. Colonial Sand and Stone Co.*, 245 F.2d 576, 578 (2d Cir. 1957)); *see also United Overseas Export Lines, Inc. v. Medluck*, 785 F.2d 1320, 1327 (5th Cir. 1986) (holding damage award in collision case was not rendered improper even though the injured vessel was later scrapped and the repairs to damage from collision were never undertaken). Defendants have not shown a genuine issue of material fact with respect to damages.

## IV.  **CONCLUSION AND ORDER**

Plaintiff has met its summary judgment burden and Defendants have not raised a genuine question of material fact on any element of Plaintiff's claim. It is therefore

**ORDERED** that the Motion for Summary Judgment [Doc. # 32] filed by Plaintiff United States of America is **GRANTED**.

Plaintiff United States of America is entitled to final judgment against Defendant John Stapp, Inc. *in personam*, against Defendant Stapp Towing Co., Inc. *in personam* (to the extent of the insurance proceeds it obtains), and against Defendant *CAPTAIN STAPP in rem*, jointly and severally, in the amount of $108,620. A final judgment will be entered in a separate order.

**SIGNED** at Houston, Texas, this **28th** day of **July, 2006**.

_____
Nancy F. Atlas
United States District Judge